UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MILISSA ROGERS,

                Plaintiff,                                  Hon. Janet T. Neff

v.                                                Case No. 1:17-cv-383

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

                Defendants.
_____/


## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>.  (ECF No. 78).  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part**.


## BACKGROUND

Plaintiff initiated this action on April 26, 2017, against the Michigan Department of Corrections asserting various state and federal law claims.  (ECF No. 1).  Plaintiff's Second Amended Complaint is asserted against the following individuals: (1) Warden Carmen Palmer; (2) Deputy Warden Scott Schooley; (3) Inspector Brock Simmons; (4) Lieutenant Robert Bevington; and (5) Human Resource Manager Monique Dingeldey.  (ECF No. 19).  In her Second Amended Complaint, Plaintiff asserts the following claims: (1) sex discrimination; (2) hostile work environment/harassment; (3) forgery of legal documents; (4) violation of the Family and Medical

Leave Act (FMLA); (5) retaliation; and (6) defamation of character.[1]  Plaintiff seeks monetary and injunctive relief.   Defendants now move for summary judgment.

## ANALYSIS

### I.        Retaliation

In her Second Amended Complaint, Plaintiff asserts a claim of "retaliation."   As Defendants note, Plaintiff does not specify whether this claim is asserted under Title VII of the Civil Rights Act of 1964 (Title VII) or some other provision.    While the Court can understand Defendants' frustration with this circumstance, such could have been addressed long ago by either moving to dismiss Plaintiff's retaliation claim as legally insufficient or moving to compel Plaintiff to provide a more definite statement of her claim.   *See* Fed. R. Civ. P. 12(b)(6), (e).   Defendants failed to avail themselves of either potential remedy.   Reading Plaintiff's pro se complaint indulgently, the Court interprets such as asserting retaliation claims under both Title VII and FMLA.   With respect to Plaintiff's Title VII retaliation claim, Defendants assert that they are entitled to relief because Plaintiff failed to first present her claim to the Equal Employment Opportunity Commission (EEOC).   The Court agrees.

A plaintiff cannot assert a Title VII claim in federal court unless she first pursued such before the EEOC. [2]  *See Tisdale v. Federal Express Corp.*, 415 F.3d 516, 527 (6th Cir. 2005). Moreover, "retaliation claims based on conduct that occurred *before* the filing of the EEOC charge

---

[1]  In response to the present motion, Plaintiff asserts additional allegations to support her claims as well as assert altogether new claims.   Plaintiff has not, however, sought to amend her Second Amended Complaint.   Thus, Plaintiff's Second Amended Complaint, (ECF No. 19), is the operative pleading regarding Plaintiff's claims and allegations in support thereof.   To the extent Plaintiff is attempting to amend her complaint in response to Defendants' motion, such is denied as untimely.   *See* Fed. R. Civ. P. 15; *Wade v. Knoxville Utilities Board*, 259 F.3d 452, 458 (6th Cir. 2001).

[2]  The plaintiff must also initiate her federal court action within 90 days of receiving a right-to-sue letter from the EEOC. *See Harris v. Giant Eagle Inc.*, 133 Fed. Appx. 288, 292 n.1 (6th Cir., May 27, 2005).   Defendants have not alleged that Plaintiff failed to comply with this requirement.

must be included in that charge."  *Ibid.*   Thus, while a pro se plaintiff's EEOC complaint must be "liberally construed," the claims permitted to proceed in federal court "must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination."  *Ibid.* Accordingly, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Ibid.*

On April 5, 2015, Plaintiff completed an EEOC Intake Questionnaire in which she alleged she was being subjected to a harassment and a hostile work environment.  (ECF No. 79-14 at PageID.564-67).   Plaintiff did not allege retaliation in this submission which is consistent with her deposition testimony that her retaliation claim concerned the Time and Attendance discipline she received in October 2015.  (ECF No. 99-6 at PageID.2685-86, 2703-08, 2729-33).   Because this Questionnaire was submitted before the events giving rise to Plaintiff's retaliation claim, this Questionnaire cannot properly exhaust Plaintiff's Title VII retaliation claim.

Plaintiff filed a Charge of Discrimination with the EEOC on May 20, 2016, several months *after* the events giving rise to her retaliation claim.  (ECF No. 79-13 at PageID.562). Plaintiff alleged that she had suffered sex discrimination.   Plaintiff did not select the box for discrimination based on "retaliation."   Moreover, Plaintiff's EEOC complaint makes no reference to the October 2015 Time and Attendance discipline which she asserts gives rise to her retaliation claim. Even interpreting Plaintiff's EEOC complaint liberally, the Court finds that it fails to allege facts that could reasonably be expected to prompt an investigation into claims of retaliation.   Plaintiff has not submitted any evidence that she pursued any additional remedial action with the EEOC.   The Court notes that the right-to-sue letter issued to Plaintiff could perhaps be relevant on this question, to the

extent that it indicates the scope of the EEOC's actual investigation.   However, neither party has suggested that the right-to-sue letter constitutes relevant evidence on this question.   The undersigned, therefore, recommends that Plaintiff's Title VII retaliation claim be dismissed because Plaintiff failed to properly exhaust such before initiating the present action.

## II.        Family and Medical Leave Act (FMLA)

In her Second Amended Complaint, Plaintiff asserts that she suffered a "violation of the federal law FMLA."   (ECF No. 19 at PageID.56).   Plaintiff has not specified whether she is asserting a claim of FMLA interference or FMLA retaliation.   Again, while Defendants could have moved to dismiss Plaintiff's FMLA claim(s) as legally deficient or moved to compel Plaintiff to provide a more definite statement of her claim, they declined to avail themselves of either remedy. Reading Plaintiff's pro se complaint indulgently, the Court interprets such as asserting both FMLA interference and FMLA retaliation claims.

Plaintiff's claim arises from an October 2015 incident in which Plaintiff was formally disciplined for "unsatisfactory time and attendance."   (ECF No. 79-6 at PageID.369-70; ECF No. 79-7 at PageID.372-76).   Plaintiff alleges that this disciplinary action was improper because her absences were excused under the FMLA.   As Defendants acknowledge, the State of Michigan subsequently concluded that the MDOC did, in fact, incorrectly calculate Plaintiff's available FMLA leave and, thus, improperly subjected her to disciplinary sanction.   (ECF No. 79-8 at PageID.395-99).   On January 26, 2016, Plaintiff was again disciplined for "unsatisfactory time and attendance." (ECF No. 79-11 at PageID.463-91).   Plaintiff alleges that this discipline was likewise improper under the FMLA.   However, Plaintiff has failed to clearly articulate the basis for this particular claim.

In the absence of direct evidence supporting her claim, FMLA interference and retaliation claims are analyzed using the familiar *McDonnell-Douglas* burden-shifting framework. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012).   Pursuant to this framework, Plaintiff must first establish a prima facie case.  *Id.* at 761.   If Plaintiff establishes a prima facie case, the burden shifts to Defendant to establish that it acted for legitimate and lawful reasons.   If Defendant satisfies his burden, Plaintiff must demonstrate that Defendant's proffered rationale is merely a pretext for illegitimate and unlawful behavior.  *Id.* at 761-62.   However, unlike claims asserted under Title VII, there is no requirement that Plaintiff pursue administrative relief before initiating legal action. *See, e.g., Austin v. Cook County*, 2009 WL 799488 at *2 (N.D. Ill., Mar. 25, 2009).

It is unlawful for any employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise" any FMLA provision.  *See* 29 U.S.C. § 2615(a)(1).   To establish a prima facie case of FMLA interference, Plaintiff must establish the following: (1) Plaintiff was an eligible employee; (2) Defendant was an employer as defined by the FMLA; (3) Plaintiff was entitled to leave under the FMLA; (4) Plaintiff gave the employer notice of her intention to take leave; and (5) the employer denied Plaintiff FMLA benefits to which she was entitled.  *Sybra*, 667 F.3d at 761.

It is unlawful for an employer to retaliate against an employee who is exercising or attempting to exercise her FMLA rights.  *See* 29 U.S.C. § 2615(a)(2).   To establish a prima facie of FMLA retaliation, Plaintiff must establish the following: (1) Plaintiff was engaged in FMLA-protected activity; (2) Defendant knew that Plaintiff was exercising her FMLA rights; (3) after obtaining such knowledge, Defendant took an employment action adverse to Plaintiff; and (4) there exists a causal connection between the protected FMLA activity and the adverse employment action.  *Sybra*, 667 F.3d at 761.

5

In their motion for summary judgment, Defendants do not argue that Plaintiff cannot establish a prima facie case of FMLA interference or FMLA retaliation.   Instead, Defendants advance two arguments.   First, in their motion for summary judgment, Defendants argue merely that Plaintiff cannot recover monetary damages on her FMLA claims.   (ECF No. 79 at PageID.314-15).   Second, in their reply brief, Defendants argue that even assuming Plaintiff can establish a prima facie case they are nevertheless entitled to relief because they honestly believed Plaintiff had, in fact, exhausted her available FMLA leave.   (ECF No. 102 at PageID.3358-59).   Defendants' argument, however, fails for at least two reasons.

First, Defendants have failed to present evidence to support their contention that they honestly believed Plaintiff had exhausted her available FMLA leave.   Defendants merely cite to the State of Michigan's determination that the MDOC violated Plaintiff's FMLA rights.   (ECF No. 79-8 at PageID.395-99).   Defendants assert that this document establishes that the error regarding Plaintiff's available FMLA leave "was a mistake that was not made by any of the individual defendants."   (ECF No. 102 at PageID.3359).   The Court discerns no such language or conclusion in this document and Defendants, rather than specifically identifying the language supporting their argument, appear to expect the Court to locate the language in question and articulate the necessary argument.   The Court declines this invitation.   *See Brenay v. Schartow*, 709 Fed. Appx. 331, 337 (6th Cir., Sept. 12, 2017) ("while it may be tempting to flesh out the parties' arguments for them, it is improper for the courts to do so"); *Wimbush v. Wyeth*, 619 F.3d 632, 638 n.4 (6th Cir. 2010) (noting that the obligation rests with the movant "to point to the evidence with specificity and particularity in the relevant brief rather than just dropping a pile of paper on the district judge's desk and expecting

6

[her] to sort it out"); *Emerson v. Novartis Pharmaceuticals Corp.*, 446 Fed. Appx. 733, 736 (6th Cir., Aug. 23, 2011) ("judges are not like pigs, hunting for truffles that might be buried in the record").

Second, Plaintiff has testified that when she met with Warden Palmer regarding the October 2015 discipline for unsatisfactory time and attendance, she told Palmer that her allegedly unexcused absences were, in fact, covered by available FMLA leave.  (ECF No. 99-6 at PageID.2729).  In response, Palmer "rolled her eyes and told [Plaintiff] FMLA won't save you." (ECF No. 99-6 at PageID.2729).  This constitutes evidence that Defendants' alleged honest mistake was merely a pretext to unlawfully deny Plaintiff leave to which she was entitled under FMLA.

Defendants are correct, however, that Plaintiff cannot recover monetary damages on her FMLA claims.  The FMLA permits eligible employees to take a certain amount of unpaid leave to care for themselves or certain other family members.  *See* 29 U.S.C. § 2612(a)(1).  Plaintiff sought to utilize FMLA leave in this matter to care for herself.  (ECF No. 79-8 at PageID.396).  As the Sixth Circuit has held, however, money damages are not available against public employers for violation of FMLA's "self-care" provision.  *See Diaz v. Michigan Department of Corrections*, 703 F.3d 956, 960-63 (6th Cir. 2013).  Plaintiff can, however, obtain prospective relief.  *Id.* at 963-66. Plaintiff is seeking both monetary and prospective relief.  While Defendants argue that Plaintiff has already received all the prospective relief to which she is entitled, Defendants have failed to establish that such is the case.  Accordingly, the undersigned recommends that as to liability on Plaintiff's FMLA claims and Plaintiff's ability to obtain prospective relief, Defendants' motion for summary judgment be denied as to Defendant Palmer and granted as to all other Defendants.  However, to the extent Defendants seek to preclude Plaintiff from obtaining monetary damages on her FMLA claims, the undersigned recommends that Defendants' motion be granted.

### III.    Sex Discrimination

As detailed below, Plaintiff advances four distinct claims that she was subjected to gender discrimination in violation of Title VII.   Pursuant to Title VII, it is unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).   In the absence of direct evidence of discrimination, Title VII claims are analyzed using the familiar *McDonnell-Douglas* burden-shifting framework.   *See Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 390 (6th Cir. 2009).

Pursuant to this framework, Plaintiff must first establish a prima facie case of discrimination.   *Id.* at 390-91.   This requires Plaintiff to demonstrate that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position in question; and (4) she was treated differently from similarly situated individuals outside of her protected class.   *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004).   If Plaintiff establishes a prima facie case of discrimination, the burden shifts to Defendant to produce "admissible evidence of a legitimate, non-discriminatory reason for its action."   *Risch*, 581 F.3d at 391.   If Defendant satisfies his burden, Plaintiff "must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination."   *Ibid.* Although the burdens of production shift throughout this analysis, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."   *Ibid.*

A.    Removal from Regular Assignments

Plaintiff first alleges that on January 27, 2015, Defendants Schooley and Simmons removed her from her "regular assignments" in response to a stabbing that occurred in the housing unit where she was assigned.  (ECF No. 19 at PageID.57).  Plaintiff alleges that "no male officers were removed."  (ECF No. 19 at PageID.57).  The Court interprets Plaintiff's allegations as asserting the claim that other male co-workers engaged in the same or similar behavior without receiving disciplinary sanction.

As part of establishing her prima facie case, Plaintiff must establish that she suffered an "adverse employment action," defined as a "materially adverse change in the terms and conditions of [her] employment."  *Deleon v. Kalamazoo County Road Commission*, 739 F.3d 914, 918 (6th Cir. 2014).  A "mere inconvenience or an alteration of job responsibilities" is insufficient to constitute an adverse employment action.  Likewise, a reassignment or transfer that does not include changes in salary, benefits, title, or work hours generally does not rise to the level of adverse employment action. *Id.* at 918-19.  There does, however, exist an exception for circumstances in which the reassignment or transfer "give[s] rise to some level of objective intolerability."  *Id.* at 919.

At her deposition, Plaintiff testified that on February 2, 2015, a stabbing occurred in the housing unit to which she was assigned.  (ECF No. 79-5 at PageID.345-46).  Following this incident, Plaintiff was temporarily given assignments outside the prisoner housing units.  (ECF No. 79-5 at PageID.346-49).  However, Plaintiff was not disciplined as a result of this stabbing incident and she was returned to housing unit duty after approximately one month.  (ECF No. 79-5 at PageID.347-52, 363).  Plaintiff has presented no evidence that she experienced a reduction in salary, benefits, title, or work hours.  Likewise, Plaintiff has presented no evidence that her brief transfer

resulted in any "objective intolerability."   Because Plaintiff cannot establish that she suffered an adverse employment action, the undersigned recommends that Defendants are entitled to summary judgment as to this claim.

B.     Discipline for Leaving Assignment

On January 21, 2016, Plaintiff was charged with having committed several workplace rule violations arising from an incident in which she allegedly "left her assignment without authorization and did not provide complete and accurate reports of her interactions with" a certain prisoner.   (ECF No. 79-12 at PageID.493).   In her Second Amended Complaint, Plaintiff references this matter, alleging that the investigation which resulted in these charges was not properly conducted. (ECF No. 19 at PageID.57-58).   Plaintiff further alleges that "no male officers [were] disciplined." (ECF No. 19 at PageID.58).   The Court interprets Plaintiff's allegations as asserting the claim that other male co-workers engaged in the same or similar behavior without receiving disciplinary sanction.

Plaintiff was scheduled to attend a disciplinary conference on January 26, 2016, at which the charges above would be addressed and Plaintiff afforded an opportunity to be heard.   (ECF No. 79-5 at PageID.359-61; ECF No. 79-12 at PageID.493-98; ECF No. 79-18 at PageID.605-12). However, rather than attend this disciplinary conference, Plaintiff simply resigned from the MDOC. (ECF No. 79-5 at PageID.359-61; ECF No. 79-12 at PageID.493-96).   Plaintiff did not receive any discipline as a result of the incident in question.   (ECF No. 79-12 at PageID.493; ECF No. 79-18 at PageID.612).   Moreover, the investigation into the misconduct allegations against Plaintiff did not constitute an adverse employment action.   *See, e.g., Kuhn v. Washtenaw County*, 709 F.3d 612, 625-26 (6th Cir. 2013).   In sum, Plaintiff did not suffer any adverse employment action as a result of the

10

incident in question.    Accordingly, the undersigned recommends that Defendants are entitled to summary judgment as to this claim.

        C.        FMLA Violation

        On October 19, 2015, Plaintiff was formally disciplined for "unsatisfactory time and attendance."    (ECF No. 79-7 at PageID.372-76).    In her Second Amended Complaint, Plaintiff alleges that this action was improper because her absences were excused under the FMLA.    (ECF No. 19 at PageID.57).    Plaintiff further alleges that "no male officers" were disciplined.    (ECF No. 19 at PageID.57).    The Court interprets these statements as asserting the claim that other male co-workers engaged in the same or similar behavior without receiving disciplinary sanction.    Plaintiff failed to identify in her various complaints any individual who was allegedly spared from discipline for having engaged in the same or similar behavior as Plaintiff.    In response to a specific discovery request, however, Plaintiff asserted that the following male co-workers "exhausted their allowable FMLA hours and were never disciplined": (1) Mike Devries; (2) Jeff May; and (3) Adam Earley. (ECF No. 79-15 at PageID.576).

        Defendants have submitted evidence that Devries, May, and Earley were all disciplined for "unsatisfactory time and attendance."    (ECF No. 79-16 at PageID.590-96).    Plaintiff argues that this evidence is insufficient to defeat her claim because the Disciplinary Reports concerning these three individuals make no mention of FMLA.    (ECF No. 99 at PageID.1850).    Plaintiff nevertheless asserts that these three male co-workers "were all similarly situated to Plaintiff."    (ECF No. 99 at PageID.1850).    This latter assertion is certainly consistent with Plaintiff's discovery response in which she stated that Devries, May, and Earley "exhausted their allowable FMLA hours and were never disciplined."    (ECF No. 79-15 at PageID.576).

Whether the Disciplinary Reports issued to Devries, May, and Earley expressly referenced FMLA does not seem particularly relevant. The essence of Plaintiff's claim is that she was disciplined for excessive work absences whereas other male co-workers were not punished for likewise incurring excessive work absences. The evidence submitted by Defendants refutes this claim and instead demonstrates that Devries, May, and Earley were all sanctioned for engaging in the same behavior which resulted in Plaintiff's sanction.[3]

In sum, Plaintiff cannot establish that she was treated differently from similarly situated individuals outside of her protected class. Accordingly, the undersigned recommends that Defendants are entitled to summary judgment as to this claim.

D.    Discipline for Allowing Prisoner to Enter Housing Unit

On December 21, 2015, Plaintiff was disciplined for allowing "a prisoner to enter a housing unit he was not assigned to and converse with another prisoner about stolen property." (ECF No. 79-10 at PageID.405-10). Because this was Plaintiff's "4th discipline on the record," she received a five-day suspension. (ECF No. 79-10 at PageID.405). In her Second Amended Complaint, Plaintiff references this incident and asserts that "no male officers [were] disciplined." The Court interprets Plaintiff's allegations as asserting the claim that other male co-workers engaged in the same or similar behavior without receiving disciplinary sanction.

Plaintiff did not identify in her various complaints any individual(s) who allegedly engaged in similar behavior without receiving discipline. In her December 2017 discovery

---

[3] The Court notes that the discipline imposed on May and Earley occurred *after* Plaintiff initiated the present action. (ECF No. 79-16 at PageID.592-96). This potentially raises a question regarding the motivation underlying this discipline and whether such was undertaken merely as a defense to Plaintiff's claim. As noted above, however, Plaintiff did not identify May or Earley in any of her complaints. Instead, Plaintiff did not identify May or Earley until December 18, 2017, *after* May and Earley had been disciplined. (ECF No. 79-15 at PageID.576). Thus, there is no evidence to call into question the motivation underlying the discipline of May and Earley vis-à-vis the present action.

responses, Plaintiff identified eleven (11) such individuals: (1) Craig Altoff; (2) Kenneth Frazier; (3) Steven Kerr; (4) Scott Doesburg; (5) Jeff Miller; (6) Eric Hudson; (7) D. Wilson; (8) Alfonzo Jones; (9) Joshua Rinckey; (10) Paul Foster; and (11) Keith Davern.   (ECF No. 79-15 at PageID.577-78). Plaintiff has failed, however, to present any evidence supporting her assertion that these co-workers engaged in similar behavior and received no punishment for such.

In response to the present motion, Plaintiff argues that summary judgment is inappropriate because Defendants failed to respond to a discovery request requesting "[d]isciplinaries of male officers whom were disciplined at the Michigan Reformatory Correctional Facility by Warden Carmen Palmer [for]. . .[a]llowing a prisoner to enter a housing unit he was not assigned to and converse with another prisoner."   (ECF No. 99-5 at PageID.2476).   Plaintiff argues that this failure demonstrates that Defendants have no evidence that her male co-workers were, in fact, disciplined when engaging in the behavior that prompted her five-day suspension.   (ECF No. 99 at PageID.1851).

While the absence of evidence is often relevant on a question, there exists an important distinction between (1) demonstrating that certain evidence does not exist, and (2) failing to ascertain whether such evidence exists.   Defendants failed to respond to the aforementioned discovery request because they objected to the scope of Plaintiff's request.   Defendants were never ordered to respond to this discovery request.   Thus, Defendants' failure to respond to this discovery request does not constitute evidence upon which Plaintiff can rely to defeat the present motion.   In sum, Plaintiff has failed to present any evidence that there were any male co-workers who engaged in similar behavior without sanction.   Because Plaintiff cannot establish a prima facie case, the undersigned recommends that Defendants are entitled to summary judgment as to this claim.

**IV.**          **Hostile Work Environment**

In her Second Amended Complaint, Plaintiff asserts that she resigned from the MDOC on January 26, 2016, "due to hostile work environment/harassment." (ECF No. 19 at PageID.58). This claim is subject to the shifting burden analysis identified above. *See Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 706 (6th Cir. 2007); *Khamati v. Secretary of the Department of the Treasury*, 557 Fed. Appx. 434, 442 (6th Cir., Feb. 13, 2014).[4]

To establish a prima facie case of a hostile work environment, Plaintiff must establish: (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her gender; (4) the harassment unreasonably interfered with Plaintiff's work performance by creating an intimidating, hostile, and offensive environment; and (5) the employer is liable for the harassing conduct. *See Minevich v. Spectrum Health-Meier Heart Center*, 1 F.Supp.3d 790, 800 (W.D. Mich. 2014) (citations omitted).

The challenged conduct "must be both objectively and subjectively unacceptable." It must be "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Ibid.* (citations omitted). While "mere teasing, offhand comments, and isolated incidents" are generally insufficient to constitute a hostile work environment, an accumulation of such incidents may be sufficient when considered together. In sum, an environment is "hostile" when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive

---

[4] The Court questions whether the application of the *McDonnell-Douglas* shifting burden analysis is appropriate to a hostile working environment claim. *See, e.g., Hollar v. RJ Coffey Cup, LLC*, 505 F.Supp.2d 439, 451 n.5 (N.D. Ohio 2007) (recognizing that permitting a defendant to offer a "legitimate, non-discriminatory" reason for his conduct "is not appropriate in a hostile work environment context because there can be no legitimate reason for the creation of a hostile work environment"). Nevertheless, the Court is bound by the Sixth Circuit's conclusion otherwise.

to alter the conditions of the victim's employment and create an abusive working environment." *Ibid.* (citations omitted).  Furthermore, conduct need not be sexually explicit to support a hostile work environment claim if such conduct "evinces anti-female animus." *Id.* at 801.

In her Second Amended Complaint, Plaintiff does not explicitly articulate the basis for this claim.  While Defendants lament the lack of specificity in Plaintiff's Second Amended Complaint with respect to this cause of action, the Court again notes that Defendants neither moved to compel Plaintiff to provide a more definite statement of her claims nor moved to dismiss such on grounds of legal insufficiency.  *See* Fed. R. Civ. P. 12(b)(6), (e).  The Court, therefore, interprets Plaintiff's claim as being based upon the factual allegations in her Second Amended Complaint which reasonably relate to such.  So interpreted, Plaintiff's claim is that two separate episodes of misconduct considered together created an unlawful hostile work environment.  First, Plaintiff alleges that between 2008 and 2012, Defendant Simmons and another prison employee, Jeff May, "accused [Plaintiff] of bringing drugs into the prison for prisoners and having sex with prisoners." (ECF No. 19 at PageID.56).  Second, Plaintiff alleges that between late 2014 and early 2016 she received several unwarranted disciplinary sanctions.  (ECF No. 19 at PageID.56-58).  Plaintiff alleges that when considered together these actions constituted a hostile work environment.[5]

Before addressing the substance of Plaintiff's claim, the alleged untimeliness of Plaintiff's claim must be addressed.  Defendants argue that the incidents which occurred between 2008 and 2012 are "outside of any statute of limitations for bringing an EEOC charge" because "an

---

[5] The Court recognizes that Plaintiff appears, in response to the present motion, to abandon any claim that conduct between 2008 and 2012 constituted a hostile work environment.  (ECF No. 103 at PageID.3376).  However, given the lack of clarity in Plaintiff's pleadings and Defendants' failure to challenge such, the Court will, for the sake of thoroughness, analyze this claim as encompassing both time periods identified in Plaintiff's Second Amended Complaint.

EEOC charge must be brought within 300 days of the actions."  (ECF No. 79 at PageID.313). While the Court agrees with this conclusion, the analysis is more nuanced than Defendants suggest.

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Court "consider[ed] whether, and under what circumstances, a Title VII plaintiff may file suit on events that fall outside the statutory time period."  *Id.* at 105.  In addressing this question, the Court recognized a clear distinction between claims based upon "a discrete retaliatory or discriminatory act" and hostile work environment claims which by "their very nature involve[] repeated conduct."  *Id.* at 110-16.

With respect to hostile work environment claims, the Court recognized that such "cannot be said to occur on any particular day," but instead occur "over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."  *Id.* at 115.  With respect to whether "a court may, for the purposes of determining liability, review all [challenged] conduct, including those acts that occur outside the filing period," the Court held that "[p]roviding that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for purposes of determining liability."  *Id.* at 116-17.  To further underscore this point, the Court continued:

> The following scenarios illustrate our point: (1) Acts on days 1–400 create a hostile work environment.  The employee files the charge on day 401. Can the employee recover for that part of the hostile work environment that occurred in the first 100 days?  (2) Acts contribute to a hostile environment on days 1–100 and on day 401, but there are no acts between days 101–400.  Can the act occurring on day 401 pull the other acts in for the purposes of liability?  In truth, all other things being equal, there is little difference between the two scenarios as a hostile environment constitutes one "unlawful employment practice" and it does not matter whether nothing occurred within the intervening 301 days so long as each act is part of the whole.  Nor, if sufficient activity occurred by day 100 to make out a claim, does it matter that the employee knows on that day that an actionable claim happened; on day 401 all incidents are still part of the same claim.  On the other hand, if

> an act on day 401 had no relation to the acts between days 1–100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act.

*Id.* at 118.

The present situation is analogous to the second example immediately above. Plaintiff claims that a hostile work environment existed as a result of events which occurred during two distinct time periods. However, the connection or relationship between the conduct occurring during the two time periods is insufficient to conclude that such constitute a single hostile work environment claim.

The conduct during the two time periods is quite dissimilar and largely involves different defendants. The Court recognizes that Defendant Simmons' conduct is implicated in both time periods. (ECF No. 99 at PageID.2681-84). However, as Plaintiff concedes, Simmons transferred to a different facility in 2013 and did not return to the facility where Plaintiff was employed until December 2014. (ECF No. 19 at PageID. 56). Thus, to the extent Plaintiff's hostile work environment claim is premised upon Defendant Simmons' conduct, such constitutes, in the Court's estimation, two distinct courses of conduct. Accordingly, the Court concludes that the conduct alleged to occur between 2008 and 2012 has not been timely asserted and, therefore, cannot be considered.[6]

---

[6] Even if the Court concluded otherwise, the result would be the same because there is no evidence that Plaintiff reported this conduct to supervisory personnel during the 2008-2012 time period or that the conduct was so pervasive that supervisory personnel should have known of the conduct in question. *See Minevich*, 1 F.Supp.3d at 800-01 (to establish a prima facie case of a hostile work environment, the plaintiff must establish that the employer knew or should have known of the allegedly improper conduct).

As for the conduct occurring between late 2014 and early 2016, the evidence fails to establish a prima facie case of a hostile work environment.   Plaintiff asserts that during this time period she received several unwarranted disciplinary sanctions.   Specifically, Plaintiff has identified the following incidents: (1) Plaintiff was temporarily removed from her regular assignments following a stabbing that occurred in her unit; (2) Plaintiff was charged with committing several workplace rule violations arising from an incident in which she allegedly left her assignment without authorization; (3) Plaintiff was disciplined for allowing a prisoner to enter a housing unit to which he was not assigned; and (4) Plaintiff was improperly disciplined for unexcused work absences because such should have been covered by FMLA.   (ECF No. 19 at PageID.56-58; ECF No. 79-5 at PageID.3345-49; ECF No. 79-10 at PageID.405-10; ECF No. 79-12 at PageID.493).

Plaintiff cannot establish that these incidents created an unlawful hostile work environment.   With respect to the temporary transfer circumstance, as previously discussed, such did not result in Plaintiff experiencing any adverse employment action.   As for Plaintiff being charged with leaving her assignment without authorization and improperly permitting a prisoner to enter her housing unit, Plaintiff has failed to demonstrate that these charges were improper or unwarranted. Plaintiff waived her right to challenge the charge of leaving her assignment by choosing not to attend the disciplinary conference and instead opting to resign her position.   (ECF No. 79-12 at PageID.495).   Regarding the charge of improperly permitting a prisoner to enter her housing unit, Plaintiff conceded at the disciplinary conference that she violated prison rules.   (ECF No. 79-10 at PageID.409-10).   Finally, while there is evidence that Defendants miscalculated the amount of leave to which Plaintiff was entitled under FMLA, this isolated incident is simply insufficient to maintain a

hostile work environment claim.    Accordingly, the undersigned recommends that Defendants'
motion for summary judgment be granted as to Plaintiff's hostile work environment claims.

## V.        Defamation of Character

In her Second Amended Complaint, Plaintiff alleged that Defendant Simmons engaged
in unlawful defamation of character by accusing Plaintiff of having sex with prisoners and supplying
drugs to prisoners.    (ECF No. 19 at PageID.58).    Plaintiff alleges that Simmons made these
comments between 2008 and 2012.    (ECF No. 19 at PageID.56).    Plaintiff also alleges that
Simmons accused Plaintiff of being a "partner in crime" with certain prisoners.    (ECF No. 19 at
PageID.58).    Plaintiff testified at her deposition that Simmons made these comments during his
investigation of the charge that Plaintiff left her assigned area without authorization.    (ECF No. 79-
5 at PageID.367-68).    This investigation was completed no later than January 26, 2016, the date
Plaintiff resigned from the MDOC.    (ECF No. 79-12 at PageID.493-560).    Plaintiff initiated the
present action fifteen (15) months later on April 26, 2017.    (ECF No. 1).

While Plaintiff has failed to identify the basis for this particular claim, the Court
interprets such as arising under Michigan law.    *See, e.g., Dunbar v. Wolgamott*, 2013 WL 5428742
at *2 (N.D. Ohio, Sept. 26, 2013) (recognizing that defamation of character fails to state a claim under
federal law, but is instead a state law claim).    Under Michigan law, a defamation claim "accrues when
the wrong upon which the claim is based was done regardless of the time when damage results."
*Wright v. Bush*, 2017 WL 3224660 at *5 (E.D. Mich., July 5, 2017) (quoting *Mitan v. Campbell*, 706
N.W.2d 420, 422 (Mich. 2005)).    The statute of limitations for a defamation claim is one year under
Michigan law and begins to run "from the time the claim accrues."    *Ibid.* (citing Michigan law).
Plaintiff has neither alleged nor produced evidence that her defamation claim accrued less than one

year before initiating the present action.    In fact, in response to the present motion Plaintiff concedes that she "did not have any Defamation of Character with-in 1-year of filing this lawsuit. . ."   (ECF No. 103 at PageID.3376).    The undersigned, therefore, recommends that Defendant Simmons is entitled to summary judgment as to this claim.

**VI.        Forgery**

In her Second Amended Complaint, Plaintiff alleges that Defendants committed "forgery of legal documents."   (ECF No. 19 at PageID.56).   Plaintiff fails, however, to articulate in her Second Amended Complaint any facts in support of this claim.   (ECF No. 19 at PageID.56-59). In her response to the present motion, Plaintiff asserts that her forgery claim is premised upon conduct by Nicholas Cusack.   (ECF No. 99 at PageID.1860).   Cusack, however, is not a defendant in this matter.   In her sur-reply to the present motion, Plaintiff alleges that Defendant Bevington completed a Critical Incident Report and improperly printed a different officer's name thereto.   (ECF No. 103 at PageID.3377).

Defendants are entitled to relief as to this claim for two reasons.    First, as Defendants correctly argue, the allegations in Plaintiff's Second Amended Complaint simply fail to state a claim on which relief may be granted.   *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009).   Moreover, even if the Court interprets Plaintiff's subsequent pleading as stating a claim for forgery against Defendant Bevington, Plaintiff has failed to produce any evidence to support such claim.

Plaintiff does not indicate whether her forgery claim is asserted under federal law or state law.   This is of no consequence, however, as the Court must ultimately consult state law.   *See, e.g. Metropolitan Life Ins. Co. v. Thomas*, 2011 WL 2470001 at *2 (W.D. Mich., June 20, 2011)

20

(recognizing that because there does not exist any federal common law on the subject of forgery, the Court must look to state law).   Under Michigan law, forgery is defined as "the making of a false document, with the intent to deceive in a manner which exposes another to loss."   *Marlo Beauty Supply, Inc. v. Farmers Insurance Group of Companies*, 2005 WL 1249249 (Mich. Ct. App., May 26, 2005) overruled on other grounds by *Marlo Beauty Supply, Inc. v. Farmers Insurance Group of Companies*, 712 N.W.2d 454 (Mich. 2006).

As part of the investigation into one of Plaintiff's misconduct charges, prison officials considered a Critical Incident Report that was completed following the incident being investigated. (ECF No. 99-1 at PageID.2053-56).   The Report identifies Eric Hudson as the Reporting Employee, but the Report is actually signed by Defendant Bevington, who indicated that Hudson was "unavailable to sign."   (ECF No. 99-1 at PageID.2056).   At his deposition, Captain Nicholas Cusack testified the Critical Incident Reports must be submitted in a timely fashion.   (ECF No. 99-6 at 2604-05). Cusack further testified that generally the Reporting Employee is able to sign the Report prior to submission, but that occasionally circumstances require that the Report be submitted before such can be accomplished.   (ECF No. 99-6 at 2604-05).   According to Cusack, in such circumstances the Report is signed by somebody else who also expressly indicates that the Reporting Employee is "unavailable to sign."   (ECF No. 99-6 at 2604-05).   While this practice may not be ideal, the salient question is whether Bevington's alleged conduct constitutes forgery.

Forgery requires the making of a false statement with the intent to deceive.   The evidence cited by Plaintiff evidences neither false statement nor intent to deceive.   To the contrary, Bevington acknowledged that he – not Hudson – was signing the Report.   Bevington further indicated that he was signing the Report because Hudson was "unavailable to sign," an assertion which Plaintiff

21

has failed to refute.   Accordingly, the undersigned recommends that Plaintiff's forgery claim be dismissed for failure to state a claim.   The undersigned further recommends, in the alternative, that Defendant Bevington is entitled to summary judgment as to this claim.

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned recommends that <u>Defendants'</u> <u>Motion for Summary Judgment,</u> (ECF No. 78), be **granted in part and denied in part**.   Specifically, the undersigned recommends that Defendants' motion be granted except for Plaintiff's FMLA claims against Defendant Palmer for prospective relief which be permitted to proceed.   Finally, the undersigned recommends that appeal of this matter would not be taken in good faith.   *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated: August 6, 2018                                        /s/ Ellen S. Carmody                       
                                                                        ELLEN S. CARMODY
                                                                        United States Magistrate Judge